**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CR-00208-GKF-1 |
| | ) | |
| AFEEZ OLAJIDE ADEBARA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the court on the Sentencing Memorandum [Doc. 292] of defendant Afeez Olajide Adebara insofar as it objects to the restitution award reflected in the Presentence Investigation Report. [Doc. 292, pp. 12-15]. For the reasons set forth below, Mr. Adebara's objection is sustained.

**Background/Procedural History**

On October 10, 2019, a grand jury returned an Indictment charging Adebara with conspiracy to commit money laundering pursuant to 18 U.S.C. § 1956(h). The Indictment alleged that Adebara conspired with six other named defendants and three unnamed defendants to conduct financial transactions involving the proceeds of an unlawful "romance scam," which amounted to mail and wire fraud. On November 3, 2020, Adebara petitioned the court to enter a plea of guilty to the charge as set forth in the Indictment. [Doc. 159; Doc. 161; Doc. 162].

Prior to sentencing, as is customary, the U.S. Probation Office for the Northern District of Oklahoma prepared a Presentence Investigation Report (PSR), which was provided to the parties. Paragraph Twelve of the PSR identified the accounts utilized to launder funds. [PSR, p. 7]. Paragraph 14, titled "Victim Impact," identified three victims of Adebara and his co-conspirators'

conduct—V.M., J.L., and B.S—and stated "[t]he probation office has received five victim impact statements from additional victims as well as requesting restitution as outlined in paragraph 54." [PSR, p. 8].  Paragraph 54, titled "Restitution," provided the total amount of $2,539,009.37 in restitution to be ordered jointly and severally amongst Adebara and the co-conspirators.  The total was calculated as follows:

| Victim Name | Amount of Loss |
|---|---|
| EC | $480,200.00 |
| BS (Victim 3) | $546,839.37 |
| JL (Victim 2) | $760,000.00 |
| PJ | $15,000.00 |
| VM (Victim 1) | $258,920.00 |
| AW | $260,000.00 |
| MR | $144,050.00 |
| CS | $74,000.00 |

[PSR, p. 12].

On May 11, 2021, Adebara filed a Sentencing Memorandum wherein he objected, in relevant part, to the restitution amount included in the PSR.  [Doc. 292, pp. 12-15].  Adebara argues that restitution must be limited to monies actually laundered through the identified bank accounts, and can not include losses associated with the underlying "romance scam."

On May 25, 2021, the court conducted a sentencing hearing.  [Doc. 296].  During the hearing, the court heard argument on Adebara's objection to the PSR restitution amounts. Following that argument, Adebara's restitution objection was distilled to two primary legal issues: (1) whether the law permits restitution for consequential damages and (2) if restitution can be

ordered for funds related to the underlying romance scam but for which there is no evidence of a financial transaction in the identified bank accounts. The court directed supplemental briefing from the parties regarding the consequential damages issue. [Doc. 296]. On June 4, 2021, the parties filed their respective supplemental sentencing memorandums regarding restitution. [Doc. 300; Doc. 301]. Thus, Adebara's objection is ripe for the court's determination. Adebara is currently scheduled to be sentenced on September 10, 2021 at 1:30 p.m.

### Statutory Framework

"Federal courts may not order restitution in criminal cases except 'as explicitly empowered by statute.'" *United States v. Wilfong*, 551 F.3d 1182, 1183 (10th Cir. 2008) (quoting *United States v. Nichols*, 169 F.3d 1255, 1278 (10th Cir. 1999)). The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, provides that, if the defendant is convicted of certain designated offenses—including offenses committed by fraud or deceit—the court must order the defendant to "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The MVRA defines "victim" as "a person [1] directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, [2] in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).[1] In cases involving damage to or loss of property, "if return of the property . . .is impossible, impracticable, or inadequate," the court shall order defendant to pay "the greater of (I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the

---

[1] The Tenth Circuit has characterized the MVRA as "set[ting] forth two separate ways an individual can be a victim," and concluded the first of the definition is "broader" and inclusive of the second definition. Accordingly, "[i]t thus follows that an individual could be deemed a victim by meeting the first criteria only, and not the second." *United States v. Speakman,* 594 F.3d 1165, 1169-70 (10th Cir. 2010).

property on the date of sentencing," less the "value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1). "[T]he court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

## Analysis

The court separately considers (1) whether the law permits restitution for consequential damages and (2) if restitution can be ordered for funds related to the underlying romance scam but for which there is no evidence of a financial transaction in the identified bank accounts.

### A.    Consequential Damages

The Tenth Circuit has interpreted the MVRA "as not allowing recovery for consequential damages." *Wilfong*, 551 F.3d at 1186; *see also United States v. Zander*, 794 F.3d 1220, 1233 (10th Cir. 2015) ("Restitution also may not be based on consequential damages."). "Consequential damages are damages that are not the direct and immediate result of the injury, but depend in part on factors outside the control or expectation of the parties." *Wilfong,* 551 F.3d at 1187 (quoting *Black's Law Dictionary* 394 (8th ed. 2004)). Accordingly, "[e]xpenses generated in recovering a victim's losses, [for instance], generally are too far removed from the underlying criminal conduct to form the basis of a restitution order." *Zander,* 794 F.3d at 1233 (quoting *United States v. Diamond,* 969 F.2d 961, 967-68 (10th Cir. 1992)); *see also Diamond*, 969 F.2d at 968 ("Expenses generated in recovering a victim's losses, therefore, generally are too far removed from the underlying criminal conduct to form the basis of a restitution order."). This includes legal expenses incurred in connection with a civil suit to recover the property. *United States v. Barton*, 366 F.3d 1160, 1167 (10th Cir. 2004).

Because the MVRA does not permit restitution for consequential damages, the following expenses incurred by victim VM shall be excluded from any restitution calculations: (1) federal withholding taxes totaling $39,500.00; (2) a penalty imposed by the Internal Revenue Service totaling $17,250.00; (3) a bank fee imposed by MidFlorida Federal Credit Union in the amount of $250.00; and (4) a bank fee imposed by Digital Federal Credit Union in the amount of $80.00. Nor shall the restitution calculation include loss of Social Security benefits totaling $25,569.60 and reverse mortgage costs totaling $238,890.86, which were referenced in VM's victim impact statement (although not included in the government's loss detail).

B.      *Funds Related to the "Romance Scam"*

Restitution under the MVRA "is limited to losses caused by the conduct underlying the offense of conviction." *United States v. Maynard,* 984 F.3d 948, 964 (10th Cir. 2020); *see also Hughey v. United States*, 495 U.S. 411 (1990). "So before ordering restitution, the district court must determine whether the victim's losses result from the offense of conviction." *United States v. Anthony,* 942 F.3d 955, 964 (10th Cir. 2019). Here, Adebara has pled guilty only to conspiracy to commit money laundering, not the romance scam.

The government bears the burden of proving causation by a preponderance of the evidence in the context of restitution. *Maynard,* 984 F.3d at 964; *United States v. Gallant,* 537 F.3d 1202, 1247 (10th Cir. 2008). To satisfy its burden, "the government must show both that the defendant's conduct is the 'but-for' cause of the individual's harm and that the defendant 'proximately' caused the harm." *United States v. Speakman,* 594 F.3d 1165, 1171 (10th Cir. 2010). "[F]or the purposes of determining if an individual is a 'victim' under the MVRA, an individual will be 'proximately harmed as a result of' the defendant's crime if either there are no intervening causes, or, if there are any such causes, if those causes are directly related to the defendant's offense." *Id.* at 1172.

As previously stated, Adebara pled guilty to one count of Conspiracy to Commit Money Laundering pursuant to 18 U.S.C. § 1956(h) "as set forth in the Indictment in this case."  [Doc. 162, p. 1].  The Tenth Circuit has explained the crime of conviction as follows:

> Conspiracy to launder money requires proof (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose.  To establish the crime of money laundering:  the government must prove four elements:  (1) that the defendant knowingly conducted a financial transaction; (2) that the funds involved were proceeds of a specified unlawful activity; (3) that the defendant knew that the funds involved were proceeds of that unlawful activity; and (4) that the transaction was designed to conceal the nature, location, source, ownership, or control of the proceeds.

*United States v. Fishman*, 645 F.3d 1175, 1187 (10th Cir. 2011) (internal quotations and citations omitted) (formatting altered from original); *see also United States v. Keck,* 643 F.3d 789, 794 (10th Cir. 2011) ("The elements of a money-laundering conspiracy require the government to prove: (1) an agreement with another person to knowingly conduct a financial transaction involving the proceeds of specified unlawful activity, with the intent to further specified unlawful activity, in violation of 18 U.S.C. § 1956; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged conspirators.").

The government argues that the MVRA requires restitution to any one directly harmed in the course of the scheme, conspiracy, or pattern, regardless of Adebara's counts of conviction. [Doc. 300, pp. 2-5].  Because the government characterizes the romance scam as a part of Adebara and co-defendants' overall "scheme," the government asks the court to direct restitution to all victims of the romance fraud.  However, the government construes the MVRA too broadly.

The Tenth Circuit's explanation of 1990 amendments to the Victim and Witness Protection Act is illustrative.[2]

> In 1990, the Supreme Court held that the Victim and Witness Protection Act, 18 U.S.C. §§ 3663-3664, authorized an award of restitution only for the loss caused by "the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). A split of authority subsequently developed as to how *Hughey* applied in mail fraud cases, where a specific mailing is typically alleged to be part of a broader scheme to defraud. Some courts held that a defendant could only be liable for the loss from the specific mailing in the count of conviction. This dispute was subsequently settled by an amendment to the VWPA effective November 29, 1990, which made clear that restitution could be ordered for the broader scheme to defraud alleged in a mail fraud count. *See, e.g., United States v. Hensley,* 91 F.3d 274, 277 (1st Cir. 1996); 18 U.S.C. § 3663A(a)(2).

*United States v. Berger,* 251 F.3d 894, 898 n.2 (10th Cir. 2001). Applying *Berger*'s explanation to these facts, Adebara may be liable for the loss from the specific financial transactions of his co-defendants—that is, financial transactions not actually conducted by him—but which are part of the broader conspiracy to commit money laundering alleged in the Indictment. However, neither the MVRA nor *Berger* support assessing restitution liability against Adebara for the entirety of the romance scam, including crimes which are not charged against any of the co-defendants or of which no co-defendants have been convicted.

Looking to the offense of conviction, the government bears the burden to prove that the defendants' conspiring to commit money laundering was the "but-for" cause of the victim's harm, as well as that the defendants "proximately" caused the harm. *Speakman,* 594 F.3d at 1171. The victim's alleged harm must be "'not too attenuated' from the defendant's wrongful act." *Id.* (quoting *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007)). Funds transferred to uncharged co-conspirators, some of which are located in Nigeria, that did not pass through any of

---

[2] Because "[t]he definitions of victim in the VWPA and the MVRA are identical . . . [,] interpretations of the VWPA are relevant to the MVRA." *United States v. West*, 646 F.3d 745, 751 n.1 (10th Cir. 2011) (internal citations omitted).

the bank accounts set forth in the Indictment are too attenuated from the offense of conviction. And the harm would have occurred regardless of defendants' conduct, such that the offense of conviction cannot constitute the "but for" cause of the harm.  That is, defendants, including Adebara, did not directly injure victims who transferred monies to uncharged co-conspirators in unalleged accounts.

The government directs the court to *United States v. Williams*, 292 F.3d 681 (10th Cir. 2002), but that case is also distinguishable.  There, defendant was convicted of two counts of making false statements to a financial institution in violation of 18 U.S.C. § 1014 and two counts of mail fraud in violation of 18 U.S.C. § 1341.  *Id.* at 683.  In considering whether certain restitution was appropriate, the court first noted the essential elements of mail fraud are:  "(1) the devising of a scheme either to (a) defraud or (b) obtain money through false or fraudulent pretenses, representations, or promises; (2) a specific intent to defraud; and (3) the use of the United States mails to execute the scheme."  *Id.* at 687 (quoting *United States v. Deters*, 184 F.3d 1253, 1257 (10th Cir. 1999)).  The court reasoned that "[b]ecause a scheme was an essential element of [defendant's] mail fraud conviction, the district court was authorized to award restitution . . . for losses incurred within the course of that scheme."  *Id.* at 688.

Again, *Williams* requires the court to consider the scheme or conspiracy as charged in the Indictment.  Insofar as the government would argue that, because mail and wire fraud are the specified unlawful activity, the court may consider the uncharged instances of mail and wire fraud that form the romance scam, the court is not persuaded.  Although money laundering pursuant to §§ 1956 and 1957 require proof that the funds involved in the transaction were proceeds of specified unlawful activity (*i.e.*, mail or wire fraud), 18 U.S.C. § 1956, or derived from specified unlawful activity, 18 U.S.C. § 1957, the elements require only that *the amounts laundered* be

derived from that activity. Thus, the court is again limited to the amounts actually laundered. *See In re Local No. 45 Metallic Lathers Union*, 568 F.3d 81, 87 (2d Cir. 2009) (explaining of § 3663A(a)(2), "'[w]hile the language expands what it is that will give rise to a compensable loss when a scheme, conspiracy or pattern is involved, the reference point to which such conspiracy is tied remains the 'offense' of which the defendant has been convicted."). Thus, restitution shall be limited to funds for which there is evidence of a financial transaction in the identified bank accounts involving the charged defendants.

### Conclusion

WHEREFORE, defendant Afeez Adebara's objection to the restitution award as reflected in the Presentence Investigation Report [Doc. 292] is sustained.

DATED this 17th day of August, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE